UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GUY T. SAPERSTEIN,

    Plaintiff,

    v.

DUMONT AIRCRAFT SALES, LLC, et al.,

    Defendants.

Case No. 16-cv-01926-WHO

**ORDER DENYING MOTION TO TRANSFER VENUE**

Re: Dkt. No. 10

## INTRODUCTION

Plaintiff Guy Saperstein, a resident of this district, brings this breach of contract action against defendants Dumont Aircraft Sales, LLC ("Dumont") and Dumont employee Kevin Wargo, both residents of the District of Delaware. Saperstein's claims arise out of an unsuccessful negotiation between the parties for the purchase of a private jet. Defendants move to transfer venue to the District of Delaware, arguing that the case should be transferred under 28 U.S.C. § 1404(a) "for the convenience of the parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a). Because defendants have not shown that the relevant factors strongly favor transfer, their motion is DENIED.

## BACKGROUND

The following facts are taken from Saperstein's complaint and the declarations submitted by the parties in connection with defendant's motion to transfer venue. Saperstein is a resident of Piedmont, California who began looking to buy a private jet in the fall of 2015. Saperstein Decl. ¶ 2 (Dkt. No. 20-1). Saperstein entered into negotiations with Justin Sullivan, a former salesperson for Dumont, which is headquartered in New Castle, Delaware. *Id.* ¶¶ 3-4; First Wargo Decl. ¶¶ 3, 6 (Dkt. No. 10-1). The negotiations were eventually taken over by Wargo, and then by the attorneys for Saperstein and Dumont. Saperstein Decl. ¶ 6; First Wargo Decl. ¶ 6. Dumont's two

principals are Wargo and Dan Piraino, both residents of Wilmington, Delaware. First Wargo Decl. ¶ 16.

The parties disagree on who initiated the negotiations. According to Wargo, "Mr. Saperstein reached out to Dumont at its offices in Delaware to initiate the purchase." First Wargo Decl. ¶ 8; *see also* Mot. at 3 (Dkt. No. 10). According to Saperstein, "[d]efendants initiated [their] solicitation communications." Saperstein Decl. ¶ 5.

Saperstein and Wargo both maintain that they conducted the negotiations from their respective home states. Saperstein asserts that he "was located in California for all [communications with defendants]." *Id.* Wargo contends that "at least some of Mr. Saperstein's communications with me about this transaction did not originate in California as he was on vacation in Hawaii during negotiations, and later in the sale process he was overseas." First Wargo Decl. ¶ 9. Wargo also asserts that "[t]o the best of [his] recollection," he only communicated with Saperstein while he was in Delaware, though he acknowledges that "it is possible that [he] spoke to Mr. Saperstein while on the road traveling for other business." *Id.* ¶ 7. Wargo states that he "never traveled to California to meet with Mr. Saperstein or otherwise to address this transaction." *Id.*

A letter of intent ("LOI") was drafted under which Saperstein offered to buy a Dassault-Breguet Falcon 50 business jet (the "Aircraft") for $2.2 million. Compl. ¶ 8 (Dkt. No. 1); *see also* Compl Ex. A (Dkt. No. 1). The LOI required Dumont to complete some work on the plane, including an "A inspection," interior refurbishment, and the installation of Wifi. LOI at 1. In addition, the LOI required Dumont to deliver the plane (1) "with all its flight, maintenance and parts manuals, weight and balance documents, along with all the aircraft's current wiring diagrams, engine and airframe records;" (2) "free of corrosion, fuel leaks, and hydraulic leaks that exceed the manufacturer's tolerances, and . . . in airworthy condition with all systems in proper working order in accordance with the manufacturers' maintenance manuals;" (3) "free of all liens and encumbrances;" (4) "current on the manufacturer's recommended maintenance program, in compliance with all applicable mandatory service bulletins and FAA airworthiness directives;" and (5) by March 10, 2016. *Id.* The LOI required Saperstein to give Dumont a "nonrefundable

deposit" of $250,000. *Id.* The LOI is silent as to where the Aircraft was to be delivered. Dumont contends that "the physical delivery of the Aircraft under the LOI was to take place in Delaware, not in California." First Wargo Decl. ¶ 12. Saperstein alleges that "the parties' contract was intended to be performed in California." Compl. ¶ 6.

Saperstein and Wargo signed the LOI on January 15, 2015. *Id.* ¶ 8. In accordance with the LOI, Saperstein transferred the $250,000 deposit to Dumont in two wire transfers on January 12, 2016 and January 15, 2016. Saperstein Decl. ¶ 10.

Dumont completed the tasks required by the LOI in several different states. Dumont performed the refurbishment work at its Illinois facility, although some "finishing touches" were completed at its Delaware facility. First Wargo Decl. ¶¶ 10, 15. Dumont performed the "A Inspection" at a third-party facility in Florida. *Id.* ¶ 11. According to Wargo, the Aircraft was never in California "at a time relevant here," and "[n]one of the inspectors or maintenance personnel who worked on the Aircraft did that work in California nor, to my knowledge, do they live or work in California." *Id.* ¶¶ 18, 25(e).

Saperstein alleges that he discovered several misrepresentations by Wargo, Sullivan, and Dumont after signing the LOI. He asserts that Wargo and Sullivan represented that Dumont had a large charter business that had grown from zero to 21 planes in only a few years, but that in reality Dumont operated only three planes and had been in the charter business for less than a year. Compl. ¶ 9; Saperstein Decl. ¶¶ 7-8. Saperstein states that the nature of Dumont's charter business was important to him because he intended to charter his plane through Dumont to recoup some of his costs. Compl. ¶ 9; Saperstein Decl. ¶ 7.

Saperstein also asserts that Dumont failed to deliver the Aircraft in the condition required by the LOI by March 10, 2016. Compl. ¶ 13. He alleges that Dumont failed to deliver the Aircraft because it required "substantial maintenance and repairs" and because it was not owned by Dumont and was subject to a $1.5 million lien. *Id.* ¶ 12. Defendants do not dispute that the Aircraft was (and is) owned by James Sipala, a resident of Wilmington, Delaware, or that the Aircraft was subject to a $1.5 million lien. Second Wargo Decl. ¶¶ 4, 11 (Dkt. No. 23-1). According to Wargo, "[t]he structure of the transaction was for Dumont, when [Saperstein] was

1  ready to close on the sale, to purchase the Aircraft from Mr. Sipala, pay off any obligations and
2  remove any associated liens, and then 'flip' the Aircraft to [Saperstein] in a subsequent sale, which
3  is how many of these transactions are structured." *Id.* ¶ 11.

4  Saperstein informed Dumont that he was still willing to purchase the Aircraft if it passed a
5  visual inspection at Dumont's facility in Delaware and a full inspection at a third-party facility.
6  Compl. ¶ 16. Dumont initially refused, but subsequently consented to the visual inspection. *Id.* ¶¶
7  17-18. Saperstein hired Edward Wetzel, an airplane mechanic and resident of California, to
8  perform the visual inspection. Saperstein Decl. ¶ 16; Wetzel Decl. ¶¶ 2-3 (Dkt. No. 20-3). Wetzel
9  states that during the inspection he "discovered a number of problems with the Aircraft's
10 logbooks, maintenance records, and physical condition, including a fuel leak, exterior corrosion
11 and missing repair records, such as the records necessary to establish compliance with mandatory
12 Airworthiness Directives issued by the Federal Aviation Administration." Wetzel Decl. ¶ 3.[1]

13 Saperstein alleges that Dumont responded to some of the problems identified by Wetzel
14 but "provided vague and incomplete responses to many other problems and no response at all as to
15 others." Compl. ¶ 19. When Dumont refused to allow a full inspection of the Aircraft, Saperstein
16 requested that Dumont return his $250,000 deposit. *Id.* ¶¶ 20-21. Dumont refused. *Id.* ¶ 21.

17 Saperstein filed his complaint on April 12, 2016. Dkt. No. 1. He brings six causes of
18 action: (1) fraudulent inducement; (2) negligent misrepresentation; (3) breach of contract;
19 (4) rescission; (5) breach of the covenant of good faith and fair dealing; (6) conversion; and
20 (7) money had and received. Compl. ¶¶ 22-60. The first two causes of action are asserted against
21 both Dumont and Wargo; the remaining five are asserted against only Dumont. *Id.* Saperstein
22 seeks damages, rescission, disgorgement, and costs of suit. *Id.* at Prayer for Relief. He does not
23 seek specific performance. *Id.*

24 Defendants filed their motion to transfer venue on May 31, 2016. Dkt. No. 10. I heard

---

[1] According to Wargo, the Aircraft and its records are located at Dumont's facility in Delaware and "prove that Saperstein's uninformed allegations regarding the condition of the Aircraft are false." First Wargo Decl. ¶ 25(d); *see also* Second Wargo Decl. ¶ 13. Wargo claims that "[m]any of these documents, by FAA rule, must remain on board the Aircraft and any inspector or expert will undoubtedly demand to review the originals of these documents." Second Wargo Decl. ¶ 13.

4

argument from the parties on July 20, 2016. Dkt. No. 28.

**LEGAL STANDARD**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[2] 28 U.S.C. § 1404(a). A motion to transfer venue under section 1404(a) requires the district court to weigh multiple factors in determining whether transfer is appropriate in the particular case. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (internal quotation marks omitted). Courts in this district usually consider the following eight factors:

> (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time [to] trial in each forum.

*Gerin v. Aegon USA, Inc.*, No. 06-cv-005407-SBA, 2007 WL 1033472, at *4 (N.D. Cal. Apr. 4, 2007); *accord Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 993 (N.D. Cal. 2011); *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151, 1156 (N.D. Cal. 2009).

"[T]he district court has discretion to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d at 498 (9th Cir. 2000). However, "[t]he general rule is that a plaintiff's choice of forum is afforded substantial weight." *Carolina Cas. Co. v. Data Broad. Corp.*, 158 F. Supp. 2d 1044, 1048 (N.D. Cal. 2001); *see also Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (noting that "great weight is generally accorded [the] plaintiff's choice of forum"); *Kaur v. U.S. Airways, Inc.*, No. 12-cv-05963-EMC, 2013 WL 1891391, at *3 (N.D. Cal. May 6, 2013) ("Generally, the plaintiff's choice

---

[2] The parties do not dispute that this action could have been brought in the District of Delaware.

5

of forum is accorded significant deference.").[3] Accordingly, in the ordinary case, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002) ("[P]laintiff's choice of forum is accorded substantial weight . . . , and courts generally will not transfer an action unless the 'convenience' and 'justice' factors strongly favor venue elsewhere.").

## DISCUSSION

### I. SAPERSTEIN'S CHOICE OF FORUM

Defendants do not contend that Saperstein's choice of forum is entitled to less than substantial weight. *See* Mot. at 6-7. They argue instead that other considerations "far outweigh' his decision to file in this district. *Id.* I agree that this action has sufficient contacts with this district for Saperstein's choice of forum to be afforded substantial weight. Accordingly, defendants "must make a strong showing of inconvenience to warrant upsetting [Saperstein's] choice of forum." *Decker*, 805 F.2d at 843.

### II. OTHER FACTORS

Defendants have not made this showing. They make no arguments with respect to the fifth through eighth factors and instead argue that the convenience of the parties, the convenience of the witnesses, and ease of access to the evidence justify transfer to Delaware. For the following reasons, I disagree.

#### A. Convenience of the Parties and Their Witnesses

Neither this district nor the District of Delaware is significantly more convenient to the parties, because the parties and their witnesses will need to travel significant distances whichever venue is chosen.

---

[3] Exceptions to this general rule include where the case is filed as a class action, and where the plaintiff's choice of forum was motivated by forum shopping (such as where the forum lacks significant connections to the allegations in the complaint). *See Lou*, 834 F.2d at 739; *Kaur*, 2013 WL 1891391, at *3; *see also Foster v. Nationwide Mut. Ins. Co.*, No. 07-cv-04928-SI, 2007 WL 4410408, at *2 (N.D. Cal. Dec. 14, 2007) ("Where forum shopping is evident, . . . courts should disregard plaintiff's choice of forum."). As discussed below, defendants do not contend that Saperstein's choice of forum is entitled to less than substantial weight. *See* Mot. at 6-7.

Defendants identify three specific Dumont employees as potential witnesses: Kevin Wargo, Amber Martin, and Dan Piraino. First Wargo Decl. ¶¶ 16-17. Defendants state that they also expect to call as witnesses unidentified Dumont employees based in Delaware and Florida "who flew the Aircraft to and from various facilities for inspections and refurbishment work in connection with the sale to [Saperstein]." Second Wargo Decl. ¶ 19. It appears that defendants may also wish to present testimony from unidentified Dumont employees based in Illinois who inspected and/or worked on the Aircraft. First Wargo Decl. ¶¶ 25(f)-25(h).

Saperstein states that he and Wetzel will testify, as well as "possibly" his negotiating attorneys, who appear to live in Washington state. Oppo. at 8-9 (Dkt. No. 20); *see also* Reply at 4 (asserting that Saperstein's negotiating attorneys are in "Washington").

Although it would be inconvenient for Wargo, Martin, Piraino, and the Delaware, Florida, and Illinois based Dumont employees to travel to California, it would also be inconvenient for Saperstein, Wetzel, Saperstein's negotiating attorneys, and Dumont's Florida and Illinois based employees to travel to Delaware. Even assuming that all of the potential witnesses identified by the parties are actually likely to testify, the convenience of the parties and their witnesses does not favor transfer.

### B.    Convenience of Third-Party Witnesses

"In considering the convenience of witnesses, courts have recognized that the convenience of non-party witnesses is more important than the convenience of party witnesses." *Kaur*, 2013 WL 1891391, at *5 (emphasis omitted); *accord Hansell v. TracFone Wireless, Inc.*, No. 13-cv-03440-EMC, 2013 WL 6155618, at *3 (N.D. Cal. Nov. 22, 2013; *Brown v. Abercrombie & Fitch Co.*, No. 13-cv-05205-YGR, 2014 WL 715082, at *4 (N.D. Cal. Feb. 14, 2014). Saperstein asserts that there are no third-party witnesses in this case. Oppo. at 8-9. Defendants identify one third-party witness in Delaware: Sipala, the Aircraft's current owner. Reply at 3-4.[4] They also identify

---

[4] Defendants first raise Sipala as a potential witness in their reply brief and the accompanying Second Wargo Declaration. Saperstein objects on the ground that the identification of Sipala for the first time in reply constitutes improper reply evidence. Dkt. No. 25. Even assuming that Sipala is properly considered for the purposes of this motion, his potential testimony does not justify transfer for the reasons discussed below.

7

two groups of third-party witnesses located in neither California nor Delaware: (1) witnesses associated with Banyan Aircraft Sales, which served as the Aircraft's broker, in Florida, Reply at 4, Second Wargo Decl. ¶ 15; and (2) witnesses associated with Banyan Aircraft Maintenance, which was responsible for the maintenance of the Aircraft while it was being marketed for sale, also in Florida, Reply at 4, Second Wargo Decl. ¶ 16. Defendants assert that Delaware is substantially more convenient for these Banyan witnesses because "the expense and inconvenience of participating in litigation in California is substantially greater [for them] than the costs and disruption of making a day trip to Delaware." Reply at 4.

Although I agree that Sipala would be inconvenienced by a trial in this district, defendants have not made a strong showing of inconvenience to third-party witnesses. In determining whether the convenience of witnesses favors transfer, courts consider not only how many witnesses each side has and the location of those witnesses, but also the importance of the witnesses. *See Saleh v. Titan Corp.*, 361 F. Supp. 2d 1152, 1160-61 (S.D. Cal. 2005); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1335-36 (9th Cir. 1984) (in forum non conveniens case, finding that the district court "improperly focused on the number of witnesses in each location" and "should have examined the materiality and importance of the anticipated witnesses' testimony and then determined their accessibility and convenience to the forum"). Defendants indicate that they may rely on witnesses from the Banyan entities, *see* Second Wargo Decl. ¶ 14-17, stating that such witnesses have "knowledge regarding the marketing, pre-purchase inspection . . . , and sale of the Aircraft to Dumont," *id.* ¶ 15. However, defendants do not identify any specific witnesses from the Banyan entities, nor do they describe any specific testimony that those witnesses would give. *See Carolina*, 158 F. Supp. 2d at 1049 ("To demonstrate inconvenience of witnesses, the moving party must identify relevant witnesses . . . and describe their testimony and its relevance."). Perhaps the Banyan witnesses would be able to provide some relevant testimony, but it is not clear how their testimony would not be cumulative of the other testimony and documentary evidence in the case. Further, a trial would place a significant burden on the Banyan witnesses whether in this district or in the District of Delaware, as both venues would entail multi-hour flights and, presumably, hotel stays for multi-day visits.

Given Sipala's presence in Delaware, I am persuaded that this factor favors transfer. But given the paucity of evidence regarding the Banyan witnesses, I find that it favors transfer only slightly. *Cf. Budget Blinds, Inc. v. Mahmood*, No. 10-cv-00552, 2010 WL 3001629, at *6-7 (C.D. Cal. July 29, 2010) (denying motion to transfer venue where the defendant identified three witnesses in the transferee forum, but only specifically identified one of them and did not "describe how [any of the third-party witness's] testimony is relevant to the case or whether the testimony is material").

### C.   Ease of Access to Evidence

#### 1.   Documentary Evidence

Defendants contend that "nearly all" of the "documents and other evidence pertaining to the Aircraft and the transaction . . . are located in Delaware." First Wargo Decl. ¶ 25(j). They state that this evidence includes log books, manuals, and other records that are now stored either on the Aircraft itself or at Dumont's Delaware facility. *Id.* ¶ 13. Saperstein counters that many of the relevant documents are in his or Wetzel's possession, and that, with respect to the other documents, "there is no cognizable burden or inconvenience in copying documents located in Delaware and producing them electronically or by mail in California." Oppo. at 9. Defendants respond that copying and transmitting the documents from Delaware to California is infeasible because "FAA regulations require all such maintenance and certification documents to remain with the aircraft."[5] Reply at 3. Defendants cite to 14 C.F.R. § 91.203, which requires an airworthiness certificate to be displayed in the aircraft, and 14 C.F.R. § 91.9, which requires a current, approved flight manual to be available in the aircraft. Reply at 3. Defendants further assert that "FAA regulation[s] and the standard practices in the airframe maintenance and inspection industry" require that an airplane's records be inspected "where they exist – with the airplane." *Id.*

Saperstein has the better of these arguments. Defendants assert that all maintenance and

---

[5] Like the potential testimony of Sipala, defendants did not raise the FAA regulations argument until their reply brief. Again, even assuming that this argument is properly considered for the purposes of this motion, it does not justify transfer for the reasons discussed below.

certification documents must "remain with the aircraft," but defendants cite no authority indicating that copies of the documents could not be made, transmitted, and used for the purposes of this litigation, while leaving the originals of the documents in place. The FAA regulations cited by defendants, for example, do not prohibit or discourage copying of the airworthiness certificate or flight manual. *See* 14 C.F.R. § 91.203; 14 C.F.R. § 91.9. Defendants also fail to cite any authority to support their assertion that "any inspector or expert will undoubtedly demand to review the originals of [the] documents." Second Wargo Decl. ¶ 13. Even assuming that this turns out to be true, it is not clear why it would weigh in favor of transfer to Delaware. If defendants' expert demands to review the originals of the documents, he or she presumably will have easy access to them in Delaware. On the other hand, if Saperstein's expert (Wetzel) demands to review the originals, he will have to travel to Delaware, but that is Saperstein's problem, not defendants'. Further, defendants do not dispute that a substantial portion of the relevant documents in this case, such as those concerning the correspondence between Saperstein and Dumont, are not governed by FAA regulations and can be easily copied and transmitted.

In sum, defendants have not shown that there are any relevant documents that cannot be copied and transmitted or otherwise inspected with minimal inconvenience to defendants. The location of the documentary evidence does not favor transfer. *Cf. Lax*, 65 F. Supp. 3d at 780 ("[T]he location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum.").

### 2. The Aircraft

Defendants also argue that the presence of the Aircraft in Delaware favors transfer. Mot. at 7. Saperstein responds that (1) the current location of the Aircraft is not relevant because the issue at trial will be the condition of the Aircraft at the time of Wetzel's visual inspection, meaning that a jury visit to the Aircraft will not be instructive; (2) if a jury visit to the Aircraft is necessary, the Aircraft can be flown to California; and (3) to the extent that further inspection of the Aircraft during discovery is necessary, it will be Saperstein, not defendants, who will be inconvenienced, in that he will have to fly Wetzel to Delaware to conduct the inspection. Oppo. at 10, 10 n.4.

1 Defendants respond that flying the Aircraft from Delaware to California would be extremely
2 expensive. Reply at 3.
3 Saperstein again has the better of these arguments. Defendants have not shown that the
4 presence of the Aircraft in Delaware is likely to cause them any meaningful inconvenience. While
5 this would be a much closer question if flying the Aircraft to California was likely to be necessary,
6 I agree with Saperstein that a jury visit to the Aircraft is unlikely to be instructive in this case, and
7 defendants offer no reason to conclude otherwise. Saperstein may still suffer some inconvenience
8 during discovery if he has to fly Wetzel to Delaware for a further inspection, but as Saperstein
9 points out, he is "entitled to choose to live with that inconvenience so that he may sue in his home
10 state." Oppo. at 10.

**CONCLUSION**

Defendants' motion to transfer venue to the District of Delaware is DENIED.

**IT IS SO ORDERED**.

Dated: August 11, 2016



WILLIAM H. ORRICK
United States District Judge

11